[8224] Writ of error granted by Supreme Court.
C. C. Kidd and wife instituted this suit against Joe H. McCracken and wife, alleging that a certain warranty deed in form executed by plaintiffs to defendants, conveying lot 5, block 8, Springtown, Tex., upon a recited consideration of $6,000, was in fact a mortgage to secure an advancement of that amount, and seeking a decree of the court to that effect, offering at the time to repay the loan, with interest. The defendants denied generally and specially plaintiffs' allegations, and the cause was tried before the court without a jury, resulting in a judgment for the defendants, from which the plaintiffs have appealed.
It is first insisted that the court erred in refusing to permit appellants to withdraw their announcement of ready, and take a nonsuit. According to appellants' bill of exceptions presenting this question, the request for a nonsuit was made under the following circumstances: On the afternoon of November 18th, after the evidence was all in and after the argument of counsel had been concluded, the court announced that he would take the matter under advisement and render his decision on the following morning. When court was called on the following morning, appellant C. C. Kidd requested and was granted permission to submit some further remarks, at the conclusion of which remarks the court made the following statement, to wit: "I do not think there can be any question from the evidence but that John McCracken came down here as the agent of Joe McCracken (defendant) to buy the property in question; so the only question in the case in my mind is as to whether the instrument in controversy was intended as a mortgage or as an outright sale. I do not believe that the decisions, wherein it is said that the proof, in order to set aside a deed, must be clear and satisfactory, place on plaintiffs a greater burden than to prove by a preponderance of the evidence that the deed was intended and understood by the parties to be a mortgage. I think the language used to that effect in some of the decisions means, in the light of the decisions read by Mr. Hood, that it must be clear to the court that the preponderance of the evidence is in plaintiffs' favor, and it is not clear to my mind that the preponderance of the evidence is in favor of the plaintiffs' *Page 840 
contention that the instrument was a mortgage. It is true, the plaintiffs have one more witness than the defendant in favor of the instrument's being a mortgage, but all the written testimony in the case bears out the contention of the defendant. And I admitted certain testimony conditionally; that is, I stated that I would hear it and announce my ruling later, as to whether I would consider it or not. I will have the stenographer come in and have him take down my ruling in regard to this testimony." At this point counsel for appellants moved the court to permit them to withdraw their announcement of ready for trial, and take a nonsuit, which the court refused, and proceeded to render judgment against them. A proper decision of the question here presented calls, for a construction of article 1301, Sayles' Ann.Civ.St. 1897, which reads: "At any time before the jury have retired the plaintiff may take a nonsuit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief; when the case is tried by the judge such nonsuit may be taken at any time before the decision is announced."
It is the contention of appellants that a preliminary statement by a judge, even though it may indicate what the final decision will be, is, nevertheless, not such an announcement of that decision as will preclude a plaintiff in his right to a nonsuit, and some authorities from other states are cited which appear, in a measure, to support this contention; but, so far as we have been able to examine those authorities, they appear to be based upon statutes which are construed to confer the right to a nonsuit on a plaintiff up to the time when the judge has actually entered his final findings. It will be observed that our statutes confer the right on a plaintiff to take a nonsuit at any time "before the decision is announced." By this language we think is meant any announcement by the judge of what his decision in the case would be. If the Legislature had intended that the right to a nonsuit could be exercised at any time until final judgment was actually rendered, the law could easily have been so written. We think the spirit of the statute is that the plaintiff will be denied nonsuit after he has learned from the court his decision in the case, and this is eminently fair; for he should not be allowed the privilege, after he has learned from the court's announcement what his decision in the case would be, to take a nonsuit, and then bring a new action and continue to do so indefinitely, until, by good fortune on his part or bad fortune on the part of the defendant, he has succeeded in securing a judgment in his favor.
The next ruling complained of presents a question of evidence. Appellants offered to prove by the witness Dr. Walter Wood, who had testified that he had had a conversation with appellant C. C. Kidd some week or two after the transaction in question, that "Mr. Kidd told me he had disposed of the buildings. I don't know what he got for them, except that I asked him what he got for them, and he told me $6,000. I asked him if that was not pretty cheap, and he told me it was; but he had a right to redeem them within two years." Appellants offered this testimony to support their contention made at the trial that the transaction was a loan, and especially to meet the testimony of appellees' witness, Dr. W. F. Gordon, who had testified that appellant C. C. Kidd, about the time of the transaction in question, had stated to him that he had sold his (Kidd's) rock houses to Dr. Joe H. McCracken. The testimony offered by appellants was excluded by the court upon the objection that such statements were self-serving, and we think properly so. In Ætna Insurance Co. v. Eastman, 95 Tex. 34, 64 S.W. 863, Chief Justice Gaines, speaking to the question under consideration, says: "But two rules are reasonably well established. First, that, in the absence of evidence impeaching the credibility of a witness, such testimony is never admissible. Moody v. Gardner, 42 Tex. 414. Second, that, whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is by reason of some motive existing at the time of the trial, or some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at a time when no such motive or influence existed." That a motive existed at the time appellant made this statement sought to be proved, calculated to influence him in making it, cannot be denied. At the time of the trial the motive may have been stronger, but this is a difference in degree, and not in kind. It is further to be noticed that in the course of the opinion above quoted from, the learned Chief Justice says: "We doubt, however, whether the declarations of a party to a suit, made at a time when they are in any manner self-serving, ought ever to be admitted in corroboration of his testimony given upon the trial."
Neither do we find any error in the court's action in refusing a new trial on the ground of newly discovered evidence. The witnesses, to procure whose testimony the new trial was sought, lived in Parker county at appellants' home town; the trial lasted several days, and for aught that appears there was sufficient time to procure their attendance at court after the witness Dr. Gordon, whose testimony it was sought to meet, had testified. Besides, we would not reverse the trial court in a matter of this kind, unless it clearly appeared that he had abused his discretion, and in the present case he has not *Page 841 
done so. The newly discovered testimony is in a large measure for impeaching purposes, and an examination of the testimony of the witness Gordon and of the proposed testimony of the absent witnesses fails to show such contradiction as would probably have changed the result upon another trial. The force of the affidavit made by the newly discovered witness, Acklin Harris, to the effect that appellee Joe H. McCracken had stated to him that he had loaned appellant Kidd money on his rock building at Springtown, is practically destroyed by his further affidavit, made to appellee's counsel on the same day, that he was not sure whether Dr. McCracken had said he loaned Kidd the money or paid him the money on a purchase of the property. The trial court correctly refused to grant a new trial to enable appellants to procure the testimony of a witness who was so uncertain and indefinite in his statements.
While there is a very marked conflict in the testimony upon the vital issue determined by the court, nevertheless there is abundant evidence to support his findings, and we accordingly affirm the judgment.
Affirmed.